**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| IDEANOMICS, INC., *et al.*,[1] | Case No. 24-12728 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Ref. No. 51** |

**ORDER (A) APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (B) APPROVING THE DESIGNATION OF TILLOU MANAGEMENT AND CONSULTING LLC AS STALKING HORSE BIDDER AND THE ASSOCIATED BID PROTECTIONS; (C) SCHEDULING AN AUCTION FOR AND HEARING TO APPROVE THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (D) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (E) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; AND (F) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession debtors in possession (the "Debtors") for the entry of: (I) an order (this "Order"), (A) approving certain bidding procedures attached hereto as **Exhibit 1** (collectively, the "Bidding Procedures") for the proposed sale (the "Sale") of all or substantially all of the Debtors' assets (the "Assets"), free and clear of liens, claims and encumbrances; (B) approving Tillou Management and Consulting LLC ("Tillou" or the "Stalking Horse Bidder") as the stalking horse bidder for the sale of the Stalking Horse Assets, and approving the Expense Reimbursement provided by the Debtors

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or state identification number are, are: Ideanomics, Inc. (8374); Wireless Advanced Vehicle Electrification, LLC (6793); Solectrac, Inc. (4653); Timios Holdings Corp. (0190); Justly Holdings Inc. (3657); Justly Markets LLC f/k/a Delaware Board of Trade Holdings, Inc. (5107); VIA Motors International, Inc. (7063); and VIA Motors, Inc. (0185). The headquarters for the above-captioned Debtors is located at 1441 Broadway, 5th Floor, Suite 5116, New York, New York 10018.

[2] Capitalized terms used but not defined herein shall have the meanings given them in the Bidding Procedures (as defined below), or to the extent not defined therein, the Motion or the Stalking Horse Agreement, as applicable.

to the Stalking Horse Bidder in accordance with the terms and conditions set forth in the Asset Purchase Agreement dated as of December 4, 2024, a copy of which was attached to the Motion (the "Stalking Horse Agreement") and the Bidding Procedures; (C) scheduling an auction, if necessary (the "Auction") and the hearing (the "Sale Hearing") on approval of the Sale; (D) approving certain procedures for assumption and assignment of executory contracts and unexpired leases (each executory contract and unexpired lease that is assumed and assigned, an "Assigned Contract," and collectively, the "Assigned Contracts") in connection with the Sale (collectively, the "Assumption and Assignment Procedures"); (E) approving the form and manner of notice, and deadlines, in connection with the Sale process; and (F) granting related relief; and (II) at a later date, an order (the "Sale Order"), (A) approving one or more Sale(s) under the Bidding Procedures, including approving the relevant Debtors' entry into and performance under the Stalking Horse Agreement or, in the event the Stalking Horse Bidder is not the Successful Bidder, such other alternative purchase agreements with one or more Successful Bidders; (B) approving the assumption and assignment of the Assigned Contracts in connection therewith; and (C) granting related relief; and due and proper notice of the Motion having been given; and it appearing that no other or further notice of the Motion is required; and it appearing that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having reviewed the Motion; and the Bidding Procedures Hearing (as defined herein) having been held; and this Court having found and determined that the relief set forth herein is in the best interests of the Debtors, their estates and creditors, and all parties in interest,

and that the legal and factual bases set forth in the Motion and at the Bidding Procedures Hearing, as applicable, establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby:

**FOUND AND DETERMINED THAT:[3]**

A. This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order.

B. Venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C. The statutory and legal predicates for the relief requested in the Motion and provided for herein are sections 105, 363, 365, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

D. In the Motion and at the hearing on the relief set forth herein (the "Bidding Procedures Hearing"), the Debtors demonstrated that good and sufficient notice of the relief granted by this Order has been given and no further notice is required. A reasonable opportunity to object or be heard regarding the relief granted by this Order (including, without limitation, with

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

respect to the Bidding Procedures) has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 2002 and all other interested parties, including parties known to the Debtors to be potentially interested in the purchase of the Debtors' assets.

E. The Bidding Procedures were negotiated in good faith by the Debtors and the Stalking Horse Bidder and the Debtors have articulated good and sufficient business reasons for this Court to approve the Bidding Procedures, and the Bidding Procedures are: (i) fair, reasonable, and appropriate; and (ii) designed to maximize recovery with respect to the Sale.

F. The Assumption and Assignment Procedures provided for herein are fair, reasonable, and appropriate and consistent with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006, and the Debtors have articulated good and sufficient reasons and business justifications for this Court to approve the Assumption and Assignment Procedures.

G. The Notice of Auction & Sale Hearing is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Sale Hearing, the Bidding Procedures, and the Assumption and Assignment Procedures to be employed in connection therewith, including, without limitation: (i) the date, time and place of the Auction (if one is held); (ii) the Bidding Procedures and the dates and deadlines related thereto; (iii) the time for objection to the Sale and the date, time, and place of the Sale Hearing; (iv) identification of the Assets that may be sold; and (v) representations describing the Sale as being free and clear of liens, claims, interests, and other encumbrances; and no other or further notice of the Sale shall be required.

H. The Notice of Potential Assumption & Assignment is appropriate and reasonably calculated to provide each non-debtor party to any Contracts (such parties, collectively, the "<u>Non-</u>

Debtor Counterparties") with proper notice of the Assumption and Assignment Procedures. The inclusion of any Contract on a Notice of Potential Assumption & Assignment does not constitute an admission that a particular Contract is an executory contract or unexpired lease of property or require or guarantee that such Contracts will be assumed and assigned and all rights of the Debtors with respect thereto are reserved.

I. No further notice beyond that described in the foregoing paragraphs is required in connection with the Sale.

J. The Debtors have articulated good and sufficient reasons and business justification for the Court to grant the relief requested in the Motion regarding the designation of Tillou as Stalking Horse Bidder, the Debtors' entry into the Stalking Horse Agreement, and the payment of the Expense Reimbursement. The Expense Reimbursement, as approved by this Order, is fair and reasonable and provides a benefit to the Debtors' estates and stakeholders.

K. If triggered in accordance with the terms of the Stalking Horse Agreement, the payment of the Expense Reimbursement under this Order and upon the conditions set forth in the Stalking Horse Agreement and the Bidding Procedures, is (i) an actual and necessary cost of preserving the Debtors' estates, within the meaning of sections 503(b) and 507(a) of the Bankruptcy Code, (ii) reasonably tailored to encourage, rather than hamper, bidding for the Purchased Assets, by providing a baseline of value, increasing the likelihood of competitive bidding at the Auction, and facilitating participation of other bidders in the sale process, thereby increasing the likelihood that the Debtors will receive the best possible price and terms for the Purchased Assets, (iii) of substantial benefit to the Debtors' estate and stakeholders and all parties in interest herein because it encouraged the Stalking Horse Bidder to submit the Stalking Horse Agreement

and is a condition of the Stalking Horse Agreement, (iv) reasonable and appropriate, (v) a material inducement for, and conditions necessary to, ensure that the Stalking Horse Bidder will continue to pursue its proposed agreement to purchase the Purchased Assets, and (vi) reasonable in relation to the Stalking Horse Bidder's efforts and to the magnitude of the Sale Transaction and the Stalking Horse Bidder's lost opportunities resulting from the time spent pursuing such transaction.

L. Entry of this Order is in the best interests of the Debtors, their estates and creditors, and all other interested parties.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Those portions of the Motion seeking approval of (a) the Debtors' entry into the Stalking Horse Agreement and all of its terms (subject to higher or otherwise better offers in accordance with this Order), (b) the Assumption and Assignment Procedures, (c) the Expense Reimbursement, (c) the marketing process and the Bidding Procedures, (d) the date and time of the Sale Hearing, and (e) the noticing and objection procedures related to each of the foregoing, including, without limitation, the notice of the Sale and the entry of this Order, substantially in the form attached hereto as **Exhibit 2** (the "Notice of Auction and Sale Hearing"), and the notice of the Debtors' potential assumption and assignment of executory contracts and unexpired leases that may be Assigned Contracts (the "Potential Assigned Contracts"), substantially in the form attached hereto as **Exhibit 3** (the "Notice of Potential Assumption and Assignment") (subclauses (a) – (e) above, collectively, the "Bidding and Auction Process"), are hereby GRANTED to the extent set forth herein.

2. Any and all objections to the Motion as it pertains to the Bidding and Auction Process or the relief granted by this Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with

prejudice.

3. The Bidding Procedures are hereby approved. The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being this Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order. The Debtors are hereby authorized to conduct the Auction pursuant to the terms of the Bidding Procedures and this Order.

4. The Debtors are authorized to conduct the bidding process in accordance with the Bidding Procedures and the terms hereof, and without the necessity of complying with any state or local bulk transfer laws or requirements applicable to the Debtors.

5. The Debtors shall have the right, in their reasonable discretion and in consultation with the Consultation Party, to withhold or limit access to any due diligence information that the Debtors determine is business-sensitive or otherwise not appropriate for disclosure to a Potential Bidder. Notwithstanding any prepetition limitations, including, without limitation, any non-disclosure, confidentiality, or similar provisions relating to any due diligence information, the Debtors shall be authorized to provide due diligence information to Potential Bidders, *provided* that such Potential Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors. The Debtors and their estates are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Qualified Bidders in connection with the Bidding Procedures or the Sale.

6. For all purposes under the Bidding Procedures: (a) the Stalking Horse Bidder shall be considered a Qualified Bidder, and the Stalking Horse Agreement shall be considered a Qualified Bid for all purposes under the Bidding Procedures, without regard to any of the

requirements or conditions set forth herein and without any other or further action by the Stalking Horse Bidder; and (b) in determining whether the Potential Bidders constitute Qualified Bidders, the Debtors may consider a combination of bids for the Assets.

7. All bidders submitting a Qualified Bid are deemed to have submitted to the jurisdiction of the Court with respect to all matters related to the Sale, the Auction and the terms and conditions of the transfer of the Assets.

8. The following Assumption and Assignment Procedures shall govern the assumption and assignment of the Contracts in connection with the Sale, and any objections related thereto:

a) By January 10, 2025, the Debtors shall file with this Court and serve on each Non-Debtor Counterparty to each of the Contracts the Notice of Potential Assumption & Assignment. In the event that the Debtors identify any Non-Debtor Counterparties that were not served with the Notice of Potential Assumption & Assignment, the Debtors may subsequently serve such Non-Debtor Counterparty with a Notice of Potential Assumption & Assignment, and the following procedures will nevertheless apply to such Non-Debtor Counterparty; provided, however, that the Cure Cost/Assignment Objection Deadline (defined below) with respect to such Non-Debtor Counterparty shall be **4:00 p.m. (prevailing Eastern Time) on the date that is the earlier of January 24, 2025, or fourteen (14) days following service of the Notice of Potential Assumption & Assignment**.[4]

b) The Notice of Potential Assumption & Assignment served on each Non-Debtor Counterparty shall (i) identify each Contract; (ii) list the proposed calculation of the cure amounts that the Debtors' analysis indicates must be paid to cure all defaults outstanding under the Contract as of such date (the "Cure Costs"); (iii) include a statement that assumption and assignment of such Contract is not required or guaranteed; and (iv) inform such Non-Debtor Counterparty of the requirement to file any Cure Cost/Assignment Objections (defined below) by the Cure Cost/Assignment Objection Deadline (defined below), subject to reasonable revision by the Debtors. Service of a Notice of Potential Assumption & Assignment does not constitute an admission that a particular

[4] Notwithstanding the service of the Notice of Potential Assumption & Assignment, the Stalking Horse Bidder retains the right, in its sole discretion, to request in writing any deletions of Contracts included in its relevant Contract and Cure Schedule under section 2.5(a)(i) of the Stalking Horse Agreement until two (2) Business Days prior to the Closing Date in accordance with the Stalking Horse Agreement. Debtors shall make any such requested deletions.

Contract is an executory contract or unexpired lease of property or confirm that the Debtors are required to assume and/or assign such Contract.

c) Objections (each, a "Cure Cost/Assignment Objection"), if any, to (i) the scheduled Cure Costs and/or (ii) the proposed assumption, assignment and/or transfer of such Contract (including the transfer of any related rights or benefits thereunder), other than objections that relate specifically to the identity of a Successful Bidder other than the Stalking Horse Bidder, must (x) be in writing; (y) state with specificity the nature of such objection, including the amount of Cure Costs in dispute; and (z) be filed with this Court and properly served on the Notice Parties (as defined below) no later than **4:00 p.m. (prevailing Eastern Time) on January 24, 2025** (the "Cure Cost/Assignment Objection Deadline"), subject to the proviso in subparagraph (a) above.

d) Objections (an "Adequate Assurance Objection") of any Non-Debtor Counterparty related solely to the identity of and adequate assurance of future performance provided by a Successful Bidder other than the Stalking Horse Bidder must be filed by **February 24, 2025, at 12:00 p.m. (prevailing Eastern Time)** (the "Supplemental Sale Objection Deadline").

e) Any Non-Debtor Counterparty to a Contract who fails to timely file and properly serve a Cure Cost/Assignment Objection or timely raise a Sale Objection or Supplemental Sale Objection as provided herein will (i) be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts with respect to such Contract in the event it is assumed and/or assigned by the Debtors, and the Debtors shall be entitled to rely solely upon the Cure Costs, (ii) be deemed to have consented to the assumption, assignment, and/or transfer of such Contract (including the transfer of any related rights and benefits thereunder) to the Stalking Horse Bidder or relevant Successful Bidder, as applicable, and (iii) be forever barred and estopped from asserting or claiming against the Debtors or the Stalking Horse Bidder or any Successful Bidder, as applicable, that any additional amounts are due or defaults exist, or that conditions to assumption, assignment, and transfer must be satisfied under such Contract, or that any related right or benefit under such Contract cannot or will not be available to the Stalking Horse Bidder or relevant Successful Bidder, as applicable. If a Cure Cost/Assignment Objection is timely filed and properly served, the Resolution Procedures (as defined below) will apply.

f) If a Non-Debtor Counterparty files a Cure Cost/Assignment Objection satisfying the requirements of these Assignment Procedures, the Debtors and the Non-Debtor Counterparty shall meet and confer in good faith to attempt to resolve any such objection without Court intervention (the "Resolution Procedures"). If the applicable parties determine that the objection cannot be resolved without judicial intervention in a timely manner, this Court shall make all necessary determinations relating to such Cure Cost/Assignment Objection at a hearing scheduled pursuant to the following Paragraph.

g) Consideration of unresolved Cure Cost/Assignment Objections, Sale Objection, and Supplemental Sale Objections relating to all Contracts, if any, will be held at the Sale Hearing, provided, however, that (i) any Contract that is the subject of a Cure Cost/Assignment Objection with respect solely to the amount of the Cure Cost may be assumed and assigned prior to resolution of such objection, (ii) the Debtors, in consultation with the Consultation Party and the Non-Debtor Counterparty to any Contract that is subject to a Cure Cost/Assignment objection, may adjourn a Cure Cost/Assignment objection, and (iii) the Successful Bidder or the Debtors, as required by the relevant Successful Bidder's Purchase Agreement, shall pay any undisputed Cure Cost on or before the Closing Date, and shall appropriately reserve funding for the disputed portion of the Cure Costs.

h) A timely filed and properly served Cure Cost/Assignment Objection or Supplemental Sale Objection will reserve the respective Non-Debtor Counterparty's rights relating to the Contract but will not be deemed to constitute an objection to the relief generally requested in the Motion with respect to the approval of the Sale.

i) The Debtors' assumption and/or assignment of a Contract is subject to approval by this Court and consummation of the Sale. Absent consummation of the Sale and entry of a Sale Order approving the assumption and/or assignment of the Contracts (with such Contracts being listed as an exhibit to the Sale Order), the Contracts shall be deemed neither assumed nor assigned, and shall in all respects be subject to subsequent assumption or rejection by the Debtors.

9. The Assumption and Assignment Procedures are appropriate and fair to all Non-Debtor Counterparties and comply in all respects with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. The Notice of Potential Assumption and Assignment is: (a) reasonably calculated to (i) provide sufficient, effective notice to all Non-Debtor Counterparties and any other affected parties of the Debtors' intent to assume and assign to the Successful Bidder some or all of the Assigned Contracts and (ii) afford the Non-Debtor Counterparties the opportunity to exercise any rights affected by the Motion and the relief granted by this Order pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006; and (b) hereby approved.

10. The inclusion of a Contract on a Notice of Potential Assumption and Assignment shall not constitute or be deemed a determination or admission by the Debtors or their estates or any other party in interest that such Contract is, in fact, an executory contract or unexpired lease

within the meaning of the Bankruptcy Code, and any and all rights of the Debtors and their estates with respect thereto shall be reserved.

11. Service of the Notice of Auction & Sale Hearing is sufficient to provide effective notice to all interested parties of, *inter alia*, the Bidding Procedures, the Auction, the Sale Hearing, the Sale, and the Assumption and Assignment Procedures in accordance with Bankruptcy Rules 2002 and 6004, as applicable, and is approved.

12. On or before three (3) business days after entry of this Order, the Debtors will cause the Notice of Auction & Sale Hearing to be filed and sent by email, where available, and by first-class mail upon:

a) holders of the thirty (30) largest unsecured claims on a consolidated basis against the Debtors, or, if one has been appointed, counsel to the official committee of unsecured creditor;

b) all persons known or reasonably believed to have asserted an interest in the Assets;

c) the Non-Debtor Counterparties to the Contracts;

d) the Attorneys General in the State(s) where the Assets are located;

e) all federal, state, and local taxing authorities in the State(s) where the Assets are located;

f) all parties that have asserted liens against the Assets;

g) the United States Securities and Exchange Commission;

h) all parties included on the Debtors' consolidated creditor matrix and all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002;

i) counsel to the Prepetition Secured Lender, Faegre Drinker Biddle & Reath LLP 600 Campus Drive, Florham Park, New Jersey 07932 (Attn: Frank Velocci (frank.velocci@faegredrinker.com)); and 1177 Avenue of the Americas, 41st Floor, New York, New York 10036 (Attn: Michael P. Pompeo (Michael.pompeo@faegredrinker.com)); and

j) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Joseph Cudia

(joseph.cudia@usdoj.gov).

13. In addition to the foregoing, the Debtors shall also post the Notice of Auction & Sale Hearing and the Bidding Procedures Order on the website of the Debtors' claims and noticing agent, Epiq Corporate Restructuring, LLC at https://dm.epiq11.com/Ideanomics, on the date that it is filed.

14. Within three (3) business days of the entry of this Order, the Debtors shall cause the Sale Notice to be published once in the national edition of *New York Times* or *USA Today*, with any modifications necessary for ease of publication. Publication of the Sale Notice as described in this Order conforms to the requirements of Bankruptcy Rules 2002(l) and 9008 and is reasonably calculated to provide notice to any affected party, including, without limitation, any Potential Bidders, and afford the affected party the opportunity to exercise any rights affected by the Motion and the relief granted by this Order.

15. Within twelve (12) hours following conclusion of the Auction, the Debtors shall file Notice of Successful Bidder and post it on the website of the Debtors' claims and noticing agent, Epiq Corporate Restructuring, LLC at https://dm.epiq11.com/Ideanomics.

16. The Notice of Potential Assumption & Assignment, and the other Assignment Procedures set forth herein, are sufficient to provide effective notice pursuant to Bankruptcy Rules 2002(a)(2), 6004(a) and 6006(c) to the Non-Debtor Counterparties to the Contracts of the Debtors' intent to potentially assume and assign some or all of the Contracts and are approved.

**Auction and Sale Hearing**

17. **Bid Deadline.** The Bid Deadline for submitting bids for the Assets shall be **February 19, 2025 at 4:00 p.m. (prevailing Eastern Time)**. No bid shall be deemed to be a Qualified Bid unless such bid meets the requirements set forth in the Bidding Procedures or is

otherwise accepted by the Debtors.

18. **Auction.** The Debtors may sell the Assets, or subsets thereof by conducting an Auction in accordance with the Bidding Procedures. If (i) at least one Qualified Bid, in addition to the Stalking Horse Bid, is received by the Bid Deadline with respect to Stalking Horse Assets or (ii) more than one Qualified Bid is received by the Bid Deadline with respect to Assets that are not Stalking Horse Assets, the Debtors will conduct an Auction in accordance with the Bidding Procedures, which Auction shall commence on or before **February 21, 2025, at 10:00 a.m. (prevailing Eastern Time)** at the offices of proposed counsel to the Debtors, Foley & Lardner LLP, 90 Park Avenue, New York, NY 10016, or such later time or such other place as the Debtors shall designate in accordance with the Bidding Procedures. In the event the Debtors designate a later time or place for the Auction, they shall (i) notify all Qualified Bidders who have submitted Qualified Bids, (ii) file notice of such change with this Court, and (iii) update, or shall cause the Debtors' claims and noticing agent to update, the website of the Debtors' claims and noticing agent to indicate the later time or place for the Auction. If the Debtors only receive the Stalking Horse Bid for the Assets, (a) the Debtors shall not hold an Auction with respect thereto; (b) the Stalking Horse Bid, as applicable, may be named the Successful Bid for the applicable Assets; and (c) the Stalking Horse Bidder, as applicable, may be named the Successful Bidder with respect thereto. Finally, the Auction may be conducted in part or in whole remotely.

19. The Auction will be conducted openly, and only the Qualified Bidders (including the Stalking Horse Bidder) are eligible to participate at the Auction. A reasonable number of professionals and principals for the Debtors, the Stalking Horse Bidder, each Qualified Bidder, and the Consultation Party shall be entitled to attend and observe the Auction, along with any other creditor, and any other party the Debtors deem appropriate (*provided, however*, that any party other

than the Qualified Bidders and the Consultation Parties shall be required to provide notice to the Debtors at least one calendar (1) day prior to the Auction by sending an email to counsel to the Debtors, at Foley & Lardner LLP, Attn: John Simon (jsimon@foley.com); Timothy Mohan (tmohan@foley.com).

20. Each Qualified Bidder participating in the Auction will be required to confirm, in writing and on the record at the Auction, that (a) it has not engaged in any collusion with respect to the Bidding Process, (b) its Qualified Bid is a good faith, bona fide offer that it intends to consummate if selected as the Successful Bidder, and (c) it agrees to serve as a backup bidder if its Qualified Bid is the next highest and best bid after the Successful Bid with respect to the Assets.

21. **Notice for Contract Counterparties.** Through the filing and service of the Notice of Successful Bid, the Debtors shall provide to any Non-Debtor Counterparty that is implicated by any Successful Bid, other than the Stalking Horse Bid, (a) the identity of the Successful Bidder and (b) instructions for contacting the Successful Bidder to obtain Adequate Assurance Information from the Successful Bidder's representative. The Debtors shall file and serve the Notice of Successful Bidder within twelve (12) hours of the conclusion of the Auction. Each Non-Debtor Counterparty that receives Adequate Assurance Information shall keep such Adequate Assurance Information confidential, and shall be restricted from using or disclosing such information to any third party other than in connection with a Supplemental Sale Objection, and in the event such Non-Debtor Counterparty files any such Supplemental Sale Objection, it shall be permitted to file any portion of such pleading containing any Adequate Assurance Information under seal without any further order of this Court.

22. **Sale Hearing.** The Sale Hearing shall be held before this Court on **February 26, 2025, at 1:00 p.m. (prevailing Eastern Time)** before the Honorable Craig T. Goldblatt, United

States Bankruptcy Judge for the Bankruptcy Court for the District of Delaware, at 824 North Market Street, 3rd Floor, Courtroom No. 7, Wilmington, Delaware 19801. At the Sale Hearing, the Debtors will seek the entry of the Sale Order(s) approving and authorizing the Sale(s) to the Successful Bidder(s). The Sale Hearing (or any portion thereof) may be adjourned by this Court or the Debtors from time to time without further notice other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice, which may be a hearing agenda stating the adjournment, on the docket of the Chapter 11 Cases

23. **Sale Objection Deadline.** Any objections to the Sale or the relief requested in connection with the Sale (a "Sale Objection"), other than an objection set by the Supplemental Sale Objection Deadline, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of this Court, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801 **on or before 4:00 p.m. (prevailing Eastern Time) on January 24, 2025** (the "Sale Objection Deadline"), and proof of service of such Sale Objection upon the Objection Notice Parties shall be filed with the Court as and when required by the Local Rules; and (e) be served upon the Notice Parties (as defined below). If a Sale Objection is not filed and served on or before the Sale Objection Deadline in accordance with the foregoing requirements, the objecting party may be barred from objecting to the Sale and being heard at the Sale Hearing, and this Court may enter the Sale Order without further notice to such party.

24. Failure to file a Sale Objection on or before the Sale Objection Deadline (a) may forever bar the assertion, whether at any Sale Hearing or thereafter, of any objection to the Motion, to entry of the Sale Order, and/or to the consummation and performance of the Sale contemplated by the Stalking Horse Agreement or any alternative purchase agreement with a Successful Bidder

other than the Stalking Horse Bidder, and (b) for purposes of section 363(f) of the Bankruptcy Code, shall be deemed to be "consent" to entry of the Sale Order and consummation of the Sale and all transactions related thereto.

25. **Supplemental Sale Objection Deadline**. The deadline to object solely to (i) issues that could not have been raised by the Sale Objection Deadline, (ii) the conduct of the Auction (if held), and (iii), solely with respect to Non-Debtor Counterparties to the Contracts, the specific identity of and adequate assurance of future performance provided by the Successful Bidder that is not the Stalking Horse Bidder with respect to the applicable Assigned Contract is the Supplemental Sale Objection Deadline of **February 24, 2025, at 12:00 p.m. (prevailing Eastern Time)**. Any Supplemental Sale Objection must be raised on or before the Supplemental Sale Objection Deadline.

26. The Debtors and any other entity shall have until **one (1) business day prior to the Sale Hearing at 4:00 p.m. (prevailing Eastern Time)** to file and serve a reply to any objection filed in connection with the Sale, including, without limitation, any Sale Objection, Supplemental Sale Objection or Cure Cost/Assignment Objection.

**Objection Procedures**

27. Any party that seeks to object to the relief requested in the Motion pertaining to approval of the Sale shall file a formal written objection that complies with the objection procedures as set forth herein and in the Motion, as applicable.

28. Sale Objections and Supplemental Sale Objections, if any, must be: (i) in writing; (ii) signed by counsel or attested to by the objecting party; (iii) in conformity with the applicable provisions of the Bankruptcy Rules and the Local Rules; (iv) state with particularity the legal and factual basis for the objection and the specific grounds therefor; (v) be filed with this Court and

(vi) served on the following parties via email:

a) Proposed counsel for the Debtors, Foley & Lardner LLP (Attn: John Simon (jsimon@foley.com); Timothy Mohan (tmohan@foley.com)); Ashby & Geddes, P.A., 500 Delaware Avenue, 8th Floor, P.O. Box 1150, Wilmington, DE 19899 (Attn: Ricardo Palacio (rpalacio@ashbygeddes.com); and Gregory A. Taylor (gtaylor@ashbygeddes.com));

b) Counsel to the Prepetition Secured Lender, Faegre Drinker Biddle & Reath LLP 600 Campus Drive, Florham Park, New Jersey 07932 (Attn: Frank Velocci (frank.velocci@faegredrinker.com)); and 1177 Avenue of the Americas, 41st Floor, New York, New York 10036 (Attn: Michael P. Pompeo (Michael.pompeo@faegredrinker.com));

c) counsel to any Official Committee of Unsecured Creditors; and

d) the Office of the United States Trustee for the District of Delaware (Attn: Joseph Cudia (joseph.cudia@usdoj.gov)) ((a) through (d), collectively, the "Notice Parties").

29. Failure to file a Sale Objection on or before the Sale Objection Deadline, or a Supplemental Sale Objection on or before the Supplemental Sale Objection Deadline, (a) shall forever bar the assertion, whether at any Sale Hearing or thereafter, of any objection to the Motion, to the entry of the Sale Order, and/or to the consummation and performance of the Sale with a Successful Bidder, including, if applicable, the Stalking Horse Bidder, and (b) for purposes of section 363(f) of the Bankruptcy Code, shall be deemed to be "consent" to entry of the Sale Order and consummation of the Sale and all transactions related thereto.

**Adequate Assurance Information**

30. Pursuant to the Stalking Horse Agreement, the Stalking Horse Bidder must provide the Debtors a list of its respective Assigned Contracts it selects to be assumed and assigned to it (subject to the provisions of the Stalking Horse Agreement allowing the Stalking Horse Bidder to amend the schedule of Assigned Contracts at any time prior to Closing). At the same time, the Stalking Horse Bidder shall provide information supporting the Stalking Horse Bidder's ability to comply with the requirements of adequate assurance of future performance under section

365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code, including, without limitation, the Stalking Horse Bidder's financial wherewithal and willingness to perform under any Assigned Contracts (the "Adequate Assurance Information") to any Non-Debtor Counterparty requesting such information.

31. As part of their bid, by the Bid Deadline, each Qualified Bidder must provide the Debtors with (a) a list of its respective Assigned Contracts and (b) Adequate Assurance Information.

32. By the later of (a) the date the Debtors file and serve the Notice of Successful Bidder and (b) one (1) day after the date such Non-Debtor Counterparty requests such information in writing from Foley & Lardner LLP, Attn: John Simon (jsimon@foley.com); Timothy Mohan (tmohan@foley.com) the Debtors shall provide Adequate Assurance Information of the Successful Bidder and Next-Highest Bidder to all Non-Debtor Counterparties that have requested such information.

33. Any party in receipt of Adequate Assurance Information under this Order shall review the Adequate Assurance Information received on a confidential basis and shall not disclose the Adequate Assurance Information except as expressly provided in this Order and the Bidding Procedures. Such Non-Debtor Counterparty may not use or disclose, except to representatives, attorneys, advisors, and financing sources (collectively, "Representatives"), any such Adequate Assurance Information for any purpose other than: (a) evaluating whether adequate assurance of future performance as required under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code has been provided; and (b) in support of any objection (subject to the limitations on disclosure set forth herein) by such Non-Debtor Counterparty relating to adequate assurance of future performance. Any objection that includes confidential, non-public Adequate

Assurance Information must be filed under seal unless disclosure of such confidential, non-public information is authorized by the Debtors and the applicable assignee(s). The party filing an objection under seal shall follow the procedures for the same set forth in Local Rule 9018-1(d). Such party shall serve an unredacted version of such objection upon the Debtors, the other Notice Parties, the Consultation Party, and the U.S. Trustee, with a copy to the Court's chambers; *provided* that all rights of all parties in interest in the Chapter 11 Cases are reserved to oppose the filing under seal of any such information and to seek any other relief from this Court with respect to such matter. Any Representative receiving Adequate Assurance Information shall be notified and shall agree to be bound by the restrictions set forth in this Order.

**Other Relief Granted**

34. The Stalking Horse Bidder shall be deemed to be a Qualified Bidder and the Stalking Horse Agreement is deemed to be a Qualified Bid. Subject to the DIP Order, the Stalking Horse Bidder is authorized to credit bid the outstanding DIP Obligations and Secured Prepetition Obligations pursuant to 11 U.S.C. § 363(k) and is not required to make a Deposit with the Debtors. Nothing in the Bidding Procedures or this Order shall prevent any secured creditor from credit bidding under section 363(k) in proposing a bid by the Bid Deadline.

35. Pursuant to sections 105, 363, 364, 503, and 507 of the Bankruptcy Code, the Debtors are hereby authorized and directed, subject to the satisfaction of the Stalking Horse Protections' Conditions (as defined herein), to pay the Expense Reimbursement (as defined in the Motion) to the Stalking Horse Bidder in accordance with the terms of the Stalking Horse Agreement without further order of this Court. The Expense Reimbursement shall only be payable if the conditions to payment of such amounts set forth in the Stalking Horse Agreement have been satisfied (collectively, the "Stalking Horse Protections' Conditions"). In the event that the Expense

Reimbursement is payable to the Stalking Horse Bidder, the Stalking Horse Bidder shall provide documentation of the expenses for which it seeks reimbursement to (a) counsel for the Debtors, (b) counsel to the Consultation Party, and (c) the United States Trustee; *provided* that such documentation shall not be required to contain time entries, but shall include a general, brief description of the nature of the matters for which services were performed (which shall provide sufficient information to determine if such fees and expenses are reasonable), and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any work product doctrine, privilege, or protection, common interest doctrine privilege or protection, any other evidentiary privilege or protection recognized under applicable law, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege, work product doctrine, privilege, or protection, common interest doctrine privilege or protection, or any other evidentiary privilege or protection recognized under applicable law. Subject to the terms of the Stalking Horse Agreement, the obligations of Debtors to pay the Expense Reimbursement shall be entitled to administrative expense claim status, within the meaning of section 503(b) of the Bankruptcy Code. In the event the Debtors consummate an Alternative Transaction (as defined in the Stalking Horse Agreement), the Expense Reimbursement shall be paid to the Stalking Horse Bidder from the sale proceeds, in cash, at the closing of such Alternate Transaction as a condition to the occurrence of such closing, and shall be payable by the Debtors without further action or order by the Court.

36. The Debtors are authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements and no claims shall arise from such non-compliance.

37. In the event that there is a conflict between this Order or the Bidding Procedures,

on the one hand, and the Motion, the Stalking Horse Agreement, or an alternative asset purchase agreement with a Successful Bidder (an "Alternative APA"), on the other hand, this Order and the Bidding Procedures shall control and govern. If there is a conflict between this Order and the Bidding Procedures, this Order shall control and govern. If there is a conflict between this Order or the Bidding Procedures, on the one hand, and any notice served in connection with the Motion or this Order, on the other hand, this Order and the Bidding Procedures shall control and govern.

38. The Notice of Auction & Sale Hearing, Notice of Potential Assumption & Assignment, and Notice of Successful Bidder in the forms attached hereto as **Exhibit 2**, **3**, and **4** are approved. Prior to filing and serving these notices, the Debtors may revise to address any missing or revised dates or other information, conform the provisions thereof to the provisions of this Order, correct any errors, finalize bracketed items, and make such other non-substantive changes as the Debtors deem necessary or appropriate.

39. Prior to mailing the Notice of Auction & Sale Hearing, the Notice of Potential Assumption & Assignment, and Notice of Successful Bidder, as applicable, the Debtors may fill in, or cause to be filled in, any missing dates and other information, correct any typographical errors, conform the provisions thereof to the provisions of this Order, and make such other, non-material changes as the Debtors deem necessary or appropriate.

40. Absent an Order of this Court to the contrary, this Order shall be binding in all respects upon any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Debtors' bankruptcy cases or upon a conversion to chapter 7 under the Bankruptcy Code.

41. Nothing herein shall be deemed to or constitute the assumption, assignment, or rejection of any executory contract or unexpired lease.

42. This Order shall be effective immediately upon entry, and any stay of orders

provided for in Bankruptcy Rules 6004(h) or 6006(d) or any other provision of the Bankruptcy Code, the Bankruptcy Rules or the Local Rules is expressly waived. The Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and may, in their sole discretion and without further delay, take any action and perform any act authorized or approved under this Order.

43. The requirements set forth in Local Rules 6004-1, 9006-1, and 9013-1 are hereby satisfied or waived.

44. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

**Dated: January 8th, 2025**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**