**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| IDEANOMICS, INC., *et al.*,[1] | Case No. 24-12728 (CTG) |
| Debtors. | (Jointly Administered) |
| | Re: Docket Nos. 34, 51, 133 & 172 |

**WITRICITY CORPORATION'S PRELIMINARY OBJECTION TO DEBTORS' PROPOSED SALE OF SUBSTANTIALLY ALL ASSETS AND ASSUMPTION AND ASSIGNMENT OF THE CONFIDENTIALITY AGREEMENT**

WiTricity Corporation ("WiTricity") respectfully submits this preliminary objection (the "Preliminary Objection") to the above-captioned debtors' (collectively, the "Debtors") proposed sale (the "Sale") of substantially all assets (the "Assets") in accordance with the *Debtors' Motion for Entry of Orders: (I)(A) Approving Bidding Procedures in Connection with the Sale of Substantially All of the Debtors' Assets; (B) Approving the Designation of Tillou Management and Consulting LLC as Stalking Horse Bidder and the Associated Bid Protections; (C) Scheduling an Auction for and Hearing to Approve Sale of Substantially All of the Debtors' Assets; (D) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (E) Approving the Form and Manner of Notice Thereof; and (F) Granting Related Relief; and (II)(A) Approving Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances; (II) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or state identification number, are: Ideanomics, Inc. (8374); Wireless Advanced Vehicle Electrification, LLC (6793); Solectrac, Inc. (4653); Timios Holdings Corp. (0190); Justly Holdings Inc. (3657); Justly Markets LLC f/k/a Delaware Board of Trade Holdings, Inc. (5107); VIA Motors International, Inc. (7063); and VIA Motors, Inc. (0185). The headquarters for the above-captioned Debtors is located at 1441 Broadway, 5th Floor, Suite 5116, New York, New York 10018.

17154439/5

*Related Relief* [Docket No. 51] (the "Bidding Procedures Motion") and the *Notice of Possible Assumption and Assignment and Cure Costs with Respect to Executory Contracts and Unexpired Leases of the Debtors in Connection with the Sale* [Docket No. 133] (the "Assumption Notice").[2] In support of this Preliminary Objection, WiTricity relies upon and incorporate by reference the *Declaration of Edward J. Benz III in Support of WiTricity Corporation's Preliminary Objection to Debtors' Proposed Sale of Substantially All Assets and Assumption and Assignment of the Confidentiality Agreement* (the "Benz Declaration") filed contemporaneously herewith. In further support of this Preliminary Objection, WiTricity respectfully states as follows:

### PRELIMINARY STATEMENT

1. WiTricity opposes the Sale pursuant to section 363 of the Bankruptcy Code and the assumption and assignment of that certain *Mutual Nondisclosure Agreement*, dated May 23, 2023 (the "Confidentiality Agreement"). With respect to the sale, the Debtors cannot sell assets in a section 363(f) sale that they do not own. Additionally, a buyer of assets in a section 363(f) sale does not acquire assets "free and clear" of claims for patent infringement against such buyer if that buyer uses those assets to infringe, post-sale, on the intellectual property rights (including the patent rights) of others. Moreover, questions of fact regarding the good faith nature of the sale require discovery before the Court can make a finding of good faith under 11 U.S.C. § 363(m) at this time.

2. WiTricity objects to the Sale to the extent the Debtors (i) seek to sell assets, specifically certain intellectual property, that are owned by WiTricity; or (ii) seek to sell the Assets to a buyer free and clear of WiTricity's claims for any post-sale patent infringement.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures Motion.

17154439/5

Curiously, the Debtors list in their disclosure schedules to the proposed asset purchase agreement the "rights" to certain "Registered Intellectual Property" as follows:

> **Schedule 5.7(a)**
> **Registered Intellectual Property**
>
> See attached listing of Registered Intellectual property.
>
> *WiTricity Corporation v. Ideanomics, Inc. and Wireless Advanced Vehicle Electrification, LLC*
> 1:24-cv-000895
>
> On July 31, 2024, WiTricity Corporation filed suit in Delaware against Ideanomics, Inc. and WAVE alleging infringement of five WiTricity (5) patents. The Delaware Court dismissed the complaint in its entirety due to WiTricity's "failure to comply with the Local Rule[s] unnecessarily wast[ing] numerous judicial resources" *Witricity Corp. v. Ideanomics Inc.*, Dkt. 15, D. Del. Sep. 9, 2024. Rather than amend its complaint to comply with the local rules, WiTricity jumped to Utah and filed an identical complaint in Utah District Court, Central Division, alleging same infringement of the same five (5) patents - *Case 2:24-cv-00695-HCN-DAO*. Counsel for Ideanomics and WAVE, Latham & Watkins, filed a Motion to Dismiss on November 14, 2024 - principally on grounds that WiTricity failed to state a claim and along with a request for dismissal with prejudice given WiTricity's access and in possession of WAVE's confidential information (based upon Declaration of Plaintiff's counsel).
>
> *Wireless Advanced Vehicle Electrification v. WiTricity Corporation et al.* Case: 2:24-cv-00577-RJS-CMR
>
> On July 30, July 31, 2024, WAVE was the subject of corporate raid in which WiTricity hired 12 of 13 non-management employees. These employees downloaded thousands of files and did not return equipment prior to and after their separation of employment. WAVE filed suit in U.S. District Court in Utah (Salt Lake City) against WiTricity and former employees alleging theft of confidential information among other claims. The case currently has a TRO in place to prevent the individual employees from working at WiTricity. WAVE is currently in the process of scheduling expedited discovery to determine the extent of the dissemination of WAVE confidential information to WiTricity and to recover, retrieve and/or destroy the stolen confidential information (including trade secrets including know-how).
>
> *Alan G. Perriton, et al v. Ideanomics, Inc and VIA Motors International, Inc.* No. 240405765
>
> On November 6, 2024, Alan Perriton (former founder and President of VIA), Robert Purcell (former CEO of VIA) and James Perriton (former IT manager of VIA) filed suit in the Third District Court in Salt Lake City, Utah on ostensibly wage and severance claims dating back to July 2023. Ideanomics and VIA Motors believes that James Perriton has kept a copy of the VIA Motors Intellectual Properties (engineering files - schematics, designs, costs, etc.).

*Debtors' Notice of Filing of Disclosure Schedules to Stalking Horse Asset Purchase Agreement* [Docket No. 172 at p. 17] (the "Disclosure Schedules Notice"); *see also* Docket No. 51-3 at p. 36 (defining "Registered Intellectual Property" as "an accurate and complete list of all registered Intellectual Property owned by Sellers and used or held for use in the Business"). No identifiable intellectual property is listed. Rather, the Debtors list lawsuits, some of which involve WiTricity,

in particular a prepetition patent infringement lawsuit against Debtor Wireless Advanced Vehicle Electrification, LLC ("WAVE").

3. Based on the disclosure schedules, it appears as if Debtors purport to sell patents listed in Schedule 5.7(a) that are either owned by or licensed to WiTricity, and that Debtors have infringed on, among other intellectual property, WiTricity's U.S. Patent Nos. 9,843,228 (the "'228 Patent"); 9,184,595 (the "'595 Patent"); 8,400,021 (the "'021 Patent"); 9,450,422 (the "'422 Patent"); and 10,141,790 (the "'790 Patent") (collectively, the "WiTricity Patents")[3]. A true and correct copy of each of the WiTricity Patents is attached to the Benz Declaration at **Exhibit B**. Debtors do not own the WiTricity patents, despite their disclosures to the contrary. As a result, Debtors cannot sell them to the Stalking Horse Purchaser (as defined below). Therefore, WiTricity filed this Preliminary Objection to preserve and protect its intellectual property rights and as well as its ability to file any post-sale claims it may have against the Debtors and buyers for any infringement of those rights by the Debtors or buyers. Accordingly, WiTricity requests that the Court deny the Sale or otherwise modify the Sale Order to make clear that the WiTricity Patents and related intellectual property are owned by WiTricity, and that all of WiTricity's intellectual property rights are preserved and unaffected by the Sale Order, consistent with the Proposed Language (as defined below).

4. With respect to the Confidentiality Agreement, WiTricity maintains that contract cannot be assumed and assigned because it is not executory, WiTricity has not consented to the assignment as required by the plain language of the contract, and doing so would inappropriately subject WiTricity to third-party claims outside the scope of the existing lawsuit related to the

---

[3] WiTricity is the owner of certain of the WiTricity Patents. Some of the WiTricity Patents are owned by the Massachusetts Institute of Technology, with WiTricity holding an exclusive license to those patents.

4

Confidentiality Agreement.

**RELEVANT BACKGROUND**

5.      WiTricity is a company that develops wireless charging technology for vehicles and specializes in inductive charging over air gaps. Benz Declaration at ¶ 4. In or around 2020, Debtor Ideanomics Inc. ("Ideanomics") acquired WAVE, a company that also specialized in wireless charging for electric vehicles. *Id.* at ¶ 4.

6.      After the acquisition, Ideanomics and WiTricity (collectively, the "Parties") entered into the Confidentiality Agreement related to WAVE. *Id.* at ¶ 5. A true and correct copy of Confidentiality Agreement is attached to the Benz Declaration at **Exhibit A**. The Confidentiality Agreement provides, in relevant part, that WiTricity will not solicit any employee of Ideanomics "during the term of this [Confidentiality] Agreement and for the period of one (1) year from the date of the last disclosure under this [Confidentiality] Agreement[.]" Confidentiality Agreement at ¶ 4; Benz Declaration at **Exhibit 5**.

7.      In May 2023, WiTricity accessed Ideanomics' data room, but found the information therein was insufficient. WiTricity alerted Ideanomics of that issue on May 31, 2023. Benz Declaration at ¶ 6. Rather than substantively responding, on June 5, 2023, Ideanomics informed WiTricity a potential purchaser was interested in Ideanomics' assets, so the Parties' diligence stopped. *Id.* at ¶ 6.

8.      On August 1, 2024, employees of Ideanomics joined WiTricity, and WAVE sued WiTricity, among other defendants, for violation of trade secret acts and other claims. *Id.* at ¶¶ 8 & 9. The lawsuit is listed in the Debtors' Disclosure Schedules Notice at Schedule 5.9 Litigation:

**Schedule 5.9**
**Litigation**

| File Date: | Case #: | Status: | Plaintiff(s) | Defendant(s) |
|---|---|---|---|---|
| 7/12/2024 | 249300865 | $3495.37 (Judgement Noticed) | Express Recovery Services, Inc. | VIAMotors Int'l, Inc. |
| 8/9/2024 | 2024cv00577 | Ongoing | WAVE, LLC | WiTricity Corporation et al |
| 9/20/2024 | 2024cv00695 | Ongoing | WiTricity Corporation | Ideanomics, Inc. et al |
| 8/8/2023 | 4197171-1 | $100,961.64 (Judgement Lien) | Cantor Fitzgerald & Co. | Ideanomics, Inc. |

Docket No. 172. The APA does not appear to transfer the litigation to the Stalking Horse Bidder (as defined below).

9. On July 30, 2024, WiTricity filed a complaint in the United States District Court for the District of Delaware asserting Debtors infringed the '228 Patent; the '595 Patent; '021 Patent; the '422 Patent; and the '790 Patent. C.A. No. 24-895-JLH (D. Del.) (Dkt. 1). A true and correct copy of the District of Delaware complaint is attached to the Benz Declaration at **Exhibit C**. WiTricity accused Debtors' wireless inductive charging system "WAVE by Ideanomics" for "Mass Transit," "Ports," and "Warehouse and Distribution" of infringement. *Id.*

10. On September 9, 2024, the Court dismissed the District of Delaware complaint without prejudice on procedural grounds. C.A. No. 24-895-JLH (D. Del.) (Dkt. 15). This dismissal was not a judgment on the merits.

11. On September 20, 2024, WiTricity filed a substantially identical complaint against Debtors in United States District Court for the District of Utah. A true and correct copy of the District of Utah complaint is attached to the Benz Declaration at **Exhibit D**. This case was pending until Debtors filed a suggestion of bankruptcy on December 6, 2024, triggering the automatic stay. This case has not been dismissed, either with or without prejudice.

12. On December 3, 2024, the Debtors entered an agreement with Tillou Management and Consulting LLC ("Stalking Horse Bidder") to purchase substantially all of Debtors' assets.

6

13. On December 9, 2024, the Debtors filed the Bidding Procedures Motion which included a proposed *Asset Purchase Agreement* ("APA"). Docket Nos. 51 & 51-3. Section 5.7 of the proposed APA states: "Schedule 5.7(a) sets forth an accurate and complete list of all [R]egistered Intellectual Property owned by Sellers and used or held for use in the Business."

14. On January 23, 2025, the Debtors filed a *Notice of Filing of Disclosure Schedules to Stalking Horse Asset Purchase Agreement*. Docket No. 172. Schedule 5.7(a) purports to disclose a "listing of Registered Intellectual Property," which lists the WiTricity's patent infringement lawsuits against Debtors as Registered Intellectual Property that is "owned by Sellers." Docket No. 172-1 at 16; *see also* Docket No. 51-3, section 5.7(a). However, Debtors do not own or have any claim to ownership or use of the patents referenced in Schedule 5.7(a)—those five patents are either owned by WiTricity or WiTricity has an interest therein and are asserted against Debtors in the District of Utah case.

15. The APA also purports to sell Debtors' assets "free and clear of all Encumbrances," which would include any "claim" or "causes of action" with respect to those assets. Docket No. 51-3 at Recitals, 1.1(31) and 1.1(59). This appears to absolve any buyer of the assets from patent infringement claims that may be brought against those assets, including the patents that are presently asserted against the assets in the District of Utah case.

16. WiTricity proposes the following language (the "Proposed Language") for inclusion in the Sale Order that would resolve this aspect of WiTricity's Preliminary Objection:

> Notwithstanding anything to the contrary in this Order and the Asset Purchase Agreement, this Order and the Asset Purchase Agreement do not in any way prohibit, prevent, impair, or otherwise affect the rights of WiTricity Corporation and its affiliates ("WiTricity") to assert
>
> intellectual property claims, including any patent infringement claims:

7

    (i)    with respect to the Debtors, by filing a proof of claim for any alleged prepetition damages and seeking an administrative expense claim(s) for any alleged postpetition damages WiTricity may assert against the Debtors, subject to the Debtors' right to dispute any such alleged damages; and

    (ii)    with respect to the Buyer or any other future owner, transferee or licensee of any Purchased Assets, by seeking any equitable remedies or damages against the Buyer or any future owner, transferee or licensee of any Purchased Assets based on such party's post-Closing conduct, solely with respect to any alleged claims of infringement by such Buyer or any future owner, transferee or licensee of the Purchased Assets on WiTricity intellectual property rights of any kind, including its patents, subject to such party's rights to dispute any such relief.

This Order does not authorize, allow, release, discharge, or otherwise cleanse the Purchased Assets or the Buyer or any future owner, transferee or licensee of the Purchased Assets of any claims based upon such Buyer's, future owner's, transferee's or licensee's infringement on WiTricity's intellectual property rights, including its patent rights, to the extent any such claims ever arise; provided, however, that WiTricity's rights to assert claims based on alleged past or present infringement against the Debtors are reserved as set forth above.

WiTricity reserves (i) any rights it has to commence a patent infringement case against the Buyer or any future owner, transferee or licensee of the Purchased Assets for any infringement by the Buyer or any future owner, transferee or licensee of the Purchased Assets on WiTricity's patents, and to pursue all rights and remedies resulting from any alleged infringement, (ii) its right to file a proof of claim, including an administrative expense claim, for damages related to patent infringement by the Debtors, if any, (iii) any rights it has to seek relief from the automatic stay to commence a patent infringement action, (iv) any rights it has to seek to file a complaint for patent infringement and seek to withdraw the reference, or (v) any and all rights to otherwise protect WiTricity's intellectual property rights, including its patent rights; provided, however, that the rights of the Debtors, the Buyer, and any other future owner, transferee or licensee of any Purchased Assets to dispute any and all of the aforementioned relief are expressly reserved.

## PRELIMINARY OBJECTION

**A.     Debtors do not Own WiTricity's Patents and Cannot Sell Them to Stalking Horse Bidder Pursuant to the Proposed APA.**

17.     Whether by mistake or design, Debtors have structured the APA and Schedule 5.7(a) in a way that appears to represent that (1) Debtors own certain Registered Intellectual Property [Docket No. 51-3 at section 5.7(a)]; (2) the Registered Intellectual Property is listed in Schedule 5.7(a) [*id.*; Docket No. 172-1 at 16]; and (3) the Registered Intellectual Property in Schedule 5.7(a) includes the District of Delaware lawsuit filed by WiTricity against Debtors for infringement of five of WiTricity's patents. *See* Docket No. 172-1 at 16.

18.     To avoid any confusion or potential waiver of intellectual property rights, WiTricity files this Preliminary Objection to the extent the APA purports to sell any rights of any kind in the WiTricity's Patents referenced in Schedule 5.7(a), titled Registered Intellectual Property. Such patents are not owned by Debtors, and they do not have the right or ability to sell them as part of the proposed section 363 sale to Stalking Horse Bidder. It is axiomatic that the Debtors cannot sell property they do not own. *See, e.g., Sony Music Entm't v. Clark Entm't Grp. (In re Clark Entm't Grp.),* 183 B.R. 73, 80 (Bankr. D.N.J. 1995) ("It would, therefore, be a violation of unfair competition principles for debtor to exploit [misappropriated intellectual property] embodied [in estate property]"); *In re Palace Quality Servs. Indus.*, 283 B.R. 868, 882 (Bankr. E.D. Mich. 2002) (the trustee's right to use that property under Section 363(b) or (c) would be no greater than that of the debtor/ thief).

19.     The Debtors also do not have the right to cleanse an infringing article by purporting to sell the infringing article free and clear of liens, claims and interests. The same Preliminary Objection applies to Schedule 5.7(c) to the extent it purports to sell any intellectual property owned by or licensed to WiTricity that is the subject of the listed litigations therein. *See* Docket No. 172-

1 at 17.

20. To the extent the Debtors do purport to claim ownership of and sell WiTricity's patents, WiTricity reserves the right to engage in discovery on the same and advance litigation on ownership of the same.[4] *In re Whitehall Jewelers Holdings, Inc.*, No. 08-11261 (KG), 2008 WL 2951974, at *3 ("A bankruptcy court may not allow the sale of property as 'property of the estate' without first determining whether the property is property of the estate") (citing numerous cases); *see also In re Popp*, 323 B.R. 260, 266 (B.A.P. 9th Cir. 2005) ("even before one gets to Section 363(f), Section 363(b) … requires that the estate demonstrate that the property it proposes to sell is 'property of the estate.'"); Collier on Bankruptcy P 363.06 (16th 2023) ("if the estate's ownership of the property is disputed, the court must determine who owns the property before it may authorize a sale free and clear.").

**B.  Section 363(b) of the Bankruptcy Code Does Not Absolve Assets from Post-Sale Patent Infringement Claims.**

21. Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor "may use, sell, or lease, other than in the ordinary course of business, property of the estate" after notice and a hearing. 11 U.S.C. § 363(b)(1). Section 363(f) permits a debtor to sell property of the estate free and clear of interests in property. *See* 11 U.S.C. § 363(f).

22. Courts have held, however, that a section 363 sale does not provide buyers a free pass for post-sale infringement. *See Fujifilm Corp. v. Benun*, 2008 WL 2676596, at *8 (D.N.J. June 30, 2008) (finding that Section 363 sale approved by a bankruptcy court did not terminate patentee's rights with respect to infringing products and did not prevent patentee from pursuing

---

[4] Even if Debtors could transfer free of WiTricity's interest in the patents, section 363(e) of the Bankruptcy Code requires adequate protection. *See e.g., In re Dispirito*, 371 B.R. 695, 699 (Bankr. D.N.J. 2007) (recognizing the several courts have concluded creditors are entitled to receive adequate protection payments pre-confirmation to protect them against the decline in value of their collateral). Here, there is no amount that Debtors could pay WiTricity that adequately protects it against the misuse or infringement of unique assets like patents.

infringement claims against buyer); *TM Patents, L.P. v. International Business Machines Corp.*, 121 F. Supp. 2d 349, 361 (S.D.N.Y. 2000) (buyer not insulated from future patent infringement despite free and clear language in bankruptcy sale order); *In re Telegroup, Inc.*, 237 B.R. 87, 90 (Bankr. D.N.J. 1999) (in holding that a proof of claim was the appropriate remedy for asserting a post-petition patent infringement claim against a debtor, the Court noted "the obvious caveat" that the party whose patent was being infringed was free to pursue its patent infringement claim against the buyer who acquired the debtor's assets and/or other non-debtor defendants in a separate litigation); *see also In re Locust Street Managers, LLC*, 2010 WL 4916390, at *6 (Bankr. S.D.N.Y. Feb. 23, 2010) (debtor could sell architectural plans free and clear of "existing copyright infringement claims" but "[n]othing contained [in the order] shall preclude future claims of copyright infringement resulting from the improper or unauthorized use of the Plans by any new owner or architect."). Similarly, in a case involving a discharge under section 524 of the Bankruptcy Code, the Federal Circuit has held that a patent holder was not barred from bringing claims for infringing acts that occurred after the bankruptcy. *See Hazelquist v. Guchi Moochie Tackle Co.*, 437 F.3d 1178, 1181 (Fed. Cir. 2006) (stating where patent holder alleges that debtor engaged in infringing activity after receiving a discharge, patent holder "has a cause of action, or multiple causes of action, which arose after the bankruptcy discharge and which is not enjoined by section 524. Thus, [debtor's] bankruptcy discharge did not immunize him for suit for those causes of action that arose after the discharge").

23. The caselaw on the matter is clear: a buyer of assets cannot be cleansed of post-sale patent infringement claims through a section 363 sale, and a buyer of assets cannot be absolved of liability for future patent infringement through a section 363 sale order or otherwise. While the buyer of estate assets pursuant to section 363 of the Bankruptcy Code may buy those assets free

and clear of a third-party patent owner's claims against a chapter 11 debtor, buying assets of a debtor pursuant to section 363 does not give the buyer authority or license to infringe on the patent rights of the third-party owner of such patents. To that end, in order to protect its intellectual property rights, WiTricity (a) offers the Proposed Language to the Debtors—language that reiterates the uncontroverted law on this issue and does not attempt to interfere with the Sale—and (b) objects to the Sale free and clear unless the Sale Order includes the Proposed Language (or a form of such language acceptable to WiTricity). The Debtors' Assets, which do not include WiTricity's patent rights, cannot be sold free and clear of any patent infringement by any buyer of the Debtors' Assets, and the Sale Order should include the Proposed Language to make that clear to avoid any assertions otherwise in the future.

24. Accordingly, to the extent this Preliminary Objection is not resolved by inclusion of the Proposed Language (or language in substantially the same form) in the Sale Order, WiTricity objects to the Sale and entry of the Sale Order on the basis that the Sale and Sale Order cannot absolve a buyer of liability for any infringement by the buyer of WiTricity's patent rights or otherwise allow for any such infringement by the buyer.

**C.     WiTricity Should be Permitted Limited Discovery to Determine Whether There was Good Faith Under 11 U.S.C. § 363(m).**

25. In its Bidding Procedures Motion, Debtors make passing reference to its belief that Stalking Horse Bidder is not an "insider" under the definition set forth in 11 U.S.C. § 101. Docket No. 51 at p. 17 ("Although Tillou itself is not an 'insider' under the definition set forth in 11 U.S.C. § 101, upon information and belief Tillou is an entity ultimately controlled by Vince McMahon, the father of the Debtors' Executive Chairman (and one of its Directors) Shane McMahon"). "Insider" is defined in part as a "relative of a general partner, director, officer, or person in control of the debtor" if the debtor is a corporation. 11 U.S.C. § 101(31)(B).

12

17154439/5

26. The Debtors admit that Stalking Horse Bidder "is an entity ultimately controlled by Vince McMahon, the father of the Debtors' Executive Chairman (and one of its Directors) Shane McMahon." Docket No. 51 at p. 17. Thus Debtors admit that the "ultimate[] control[er]" of the Stalking Horse Bidder is a "relative of a general partner, director, officer, or person in control" of the Debtor. Consequently, the proposed transaction should be subject to strict scrutiny. *See, e.g., Pepper v. Litton*, 308 U.S. 295, 307-08 (1939); *Matter of Lifschultz Fast Freight*, 132 F.3d 339, 344 (7th Cir. 1997) ("Insider's dealings with debtor-corporation are ordinarily subject to rigorous or strict scrutiny."); ("Insider transactions subject to greater scrutiny than arms' length transactions."); *In re Wingspread Corp.*, 92 B.r. 87, 93 (Bankr. S.D.N.Y. 1988) ("Sales to fiduciaries are necessarily subject to heightened scrutiny because they are rife with the possibility of abuse."); *Liberty Mutual Insurance Co. v. Leroy Holdings Co., Inc.*, 226 B.R. 746, 755 (N.D.N.Y. 1998) ("The conduct of an insider is subject to more rigorous scrutiny.").

27. Despite the clear insider ties between the buyer and seller, the Debtors attempt to assure interested parties that the "marketing and auction process should substantially ensure that the highest and best bids are obtained" and that "Debtors intend to keep information about other bids and board and management meetings and deliberations regarding the same, confidential from Shane McMahon." Docket No. 51 at p. 17. However, Debtors' own language is cautiously non-absolute: "marketing and auction process *should substantially* ensure that the highest and best bids are obtained;" "Debtors *intend* to keep information…confidential from Shane McMahon." *Id.* (emphases added).

28. Thus, a question exists as to the sanctity of the sale process and whether there has been any collusion among the McMahon's, Stalking Horse Bidder, and Debtors as a part of the sale process. As a result, the Court should refrain from making a finding of good faith under section

13

363(m) of the Bankruptcy Code at this time. The party seeking a finding of good faith must present an evidentiary record. *See In re M Capital Corp.,* 290 B.R. 743, 747-48 (9th Cir. B.A.P. 2003). Such evidentiary record, and finding of good faith, must come at the time of the approval of the sale. *See In re Abbotts Dairies of Penn., Inc,.* 788 F.2d 143,148 (3d Cir. 1996). Since *Abbotts Dairies* requires a finding of good faith prior to approving a sale, discovery is necessary to determine that Stalking Horse Bidder is a good faith purchaser and that the sale process was fair and equitable. Additional discovery should be permitted to provide the court with evidence of bad faith. *See In re Schugg*, 2006 WL 1455568, *11 (D. Ariz. May 22, 2006) (holding that the bankruptcy court erred in denying an opportunity to conduct discovery when there were material issues of fact as to whether the purchaser acted in good faith and whether the proposed sale was fair and equitable); *Abbotts Dairies*, 788 F.2d at 149 (holding that the district court should have remanded to the bankruptcy court to develop evidence as to whether or not the purchaser acted in good faith); *In re City Equities Anaheim, Ltd.,* 22 F.3d 954 (9th Cir. 1994) (holding the same in the context of a settlement).

29.     Here, the insider ties between the controlling members of the Stalking Horse Bidder and Debtors, combined with the expedited nature of the sale process thus far leaves open material issues of fact regarding whether Stalking Horse Bidder and Debtors are acting and have acted in good faith. WiTricity reserves the right to seek discovery on these issues testing the sale process and the parties' involvement in the same.

**D.     The Confidentiality Agreement Cannot be Assumed and Assigned.**

30.     The Confidentiality Agreement cannot be assumed and assigned for three reasons. *First*, the Confidentiality Agreement is not an executory contract that can be assumed and assigned. A contract is not executory under section 365 of the Bankruptcy Code "unless both

14

parties have unperformed obligations that would constitute a material breach if not performed." *In re Columbia Gas Sys. Inc.,* 50 F3d 233, 239 (3d Cir. 1995). Here, because more than one year has passed since the May 2023 disclosure of data-room confidential information to WiTricity, the Confidentiality Agreement no longer obligates WiTricity to refrain from soliciting WAVE or Ideanomics employees. Confidentiality Agreement at ¶ 4; Benz Declaration at **Exhibit A**. At most, it provides that WiTricity must keep the incomprehensible data-room information confidential. While WiTricity is complying with that obligation, there are no reciprocal obligations imposed on Ideanomics making the Confidentiality Agreement executory.

31.     *Second*, the plain terms of the Confidentiality Agreement require WiTricity's consent prior to assignment. The Confidentiality Agreement states "[t]his Agreement shall not be assigned by either party without the written consent of the other, except in connection with the transfer of substantially all of the assets, stock or business of such party. Subject to the foregoing, this Agreement shall inure to the benefit of and be binding upon the successors and permitted assigns of the parties." Confidentiality Agreement at ¶ 11; Benz Declaration at **Exhibit A**. While the current APA contemplates a sale of substantially all of the Debtors' assets, the stalking horse bid is subject to higher and better bids, which may not include the same. *See* Bidding Procedures Motion at ¶¶ 17, 22, 24, 31. 54. Because the entirety of the Debtors' business related to the Confidentiality Agreement may not be sold, consent to the assignment is required, and for the reasons stated herein, is not being granted.

32.     Third, if the APA does not purport to transfer Debtors' interest in the lawsuit styled as *WAVE, LLC v. WiTricity Corporate et al.,* Case No. 2024cv00577, then WiTricity may be inappropriately subject to claims of the third-party purchaser, as well as those of WAVE. Benz Declaration at **Exhibit D**.

15

17154439/5

33. Accordingly, the Confidentiality Agreement should not be assumed and assigned.

## RESERVATION OF RIGHTS

34. WiTricity reserves the right to supplement its Preliminary Objection at any time prior to any hearing relating to the Preliminary Objection. WiTricity expressly reserves the right to raise additional or further objections to any sale.

## CONCLUSION

WHEREFORE, WiTricity respectfully requests that the Court (i) deny the Bidding Procedures Motion as currently drafted and (ii) grant such other and further relief the Court deems just and proper.

Dated: January 31, 2025               **MORRIS JAMES LLP**

*/s/ Tara C. Pakrouh*
Tara C. Pakrouh (DE Bar No. 6192)
Cortlan S. Hitch (DE Bar No. 6720)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
E-mail: tapkrouh@morrisjames.com
              chitch@morrisjames.com

-and

**BUTZEL LONG, P.C.**
Daniel G. Vivarelli, Jr. (*pro hac vice* forthcoming)
1909 K. Street, N.W., Suite 860
Washington, DC 20006
Telephone: (202) 454-2800
Facsimile: (202) 454-2805
E-mail: vivarelli@butzel.com

-and-

        Max J. Newman (*pro hac vice* forthcoming)
        201 West Big Beaver Road, Suite 1200
        Troy, MI 48084
        Telephone: (248) 258-1616
        Facsimile: (248) 258-1439
        E-mail: newman@butzel.com

*Counsel to Witricity Corporation*