**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| IDEX WIND DOWN, INC. f/k/a IDEANOMICS, INC., *et al.*,[1] | Case No. 24-12728 (CTG) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: August 25, 2025 at 3:00 p.m.<br>Objection Deadline: August 18, 2025 at 4:00 p.m. |

**MOTION OF SUPOR PROPERTIES 600 URBAN RENEWAL, LLC FOR ENTRY**
**OF AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY**
**PURSUANT TO § 362 OF THE BANKRUPTCY CODE**

Supor Properties 600 Urban Renewal, LLC ("Movant"), by and through its undersigned counsel, hereby submits this motion (the "Motion") for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Order"), pursuant to section 362(d) of title 11 of the United States Code (the "Bankruptcy Code"), granting relief from the automatic stay in order to permit the United States Bankruptcy Court for the District of New Jersey (the "NJ Bankruptcy Court") to consider and rule upon a motion to disallow the proof of claim filed by Ideanomics Inc. (the "Debtor") in the Movant's jointly administered bankruptcy proceeding case no. 24-13427 as set forth herein and incorporated into the Order.  In support of the Motion, Movant respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or state identification number are, are: IDEX Wind Down, Inc. f/k/a Ideanomics, Inc. (8374); WAVE Wind Down, LLC f/k/a Wireless Advanced Vehicle Electrification, LLC (6793); Solectrac, Inc. (4653); Timios Holdings Corp. (0190); Justly Holdings Inc. (3657); Justly Markets Wind Down LLC f/k/a Justly Markets LLC f/k/a Delaware Board of Trade Holdings, Inc. (5107); VIA Motors International, Inc. (7063); and VIA Motors, Inc. (0185). The headquarters for the above-captioned Debtors is located at 217 W. 18th Street, PO Box 70, New York, NY 10113.

**JURISDICTION**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Local Rule 9013-1(f), Movant consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicate for the relief requested herein is section 362 of the Bankruptcy Code.

**BACKGROUND**

 A.      **The Lease**

4.      Movant is the landlord and the owner of the real property commonly known as 600 Guyon Drive, Harrison, NJ (the "Premises"). *See* Certification of William Waldman in Support of Motion of Supor Properties 600 Urban Renewal, LLC for Entry of an Order Granting Relief from the Automatic Stay Pursuant to § 362 of the Bankruptcy Code filed contemporaneously herewith (hereafter the "Waldman Cert.") at ¶ 2.

5.      On or about October 13, 2021, Movant leased the Premises to Debtor by written Lease Agreement (the "Lease"). *See* Waldman Cert. at ¶ 3.

6.      The term of the Lease was five (5) years to commence on November 1, 2021, and to terminate on October 31, 2026. *See* Waldman Cert. at ¶ 4.

7.      Under the Lease, Debtor took possession of the Premises. *See* Waldman Cert. at ¶ 5.

8.      Pursuant to the Lease, Debtor provided a security deposit to Movant in the sum of $161,020 (the "Security Deposit"). *See* Waldman Cert. at ¶ 6.

9.      Pursuant to the Lease, in the First Year of the Lease (November 1, 2021 to October 31, 2022), Debtor was required to pay to Movant base rent of $80,510 for the Premises on the first day of each and every calendar month as Basic Rent. *See* Waldman Cert. at ¶ 7.

10.      Pursuant to the Lease, in the Second Year of the Lease (November 1, 2022 to October 31, 2023), Debtor was required to pay to Movant base rent of $82,925.30 for the Premises on the first day of each and every calendar month as Basic Rent. *See* Waldman Cert. at ¶ 8.

11.      Pursuant to the Lease, in the Third Year of the Lease (November 1, 2023 to October 31, 2024), Debtor was required to pay to Movant base rent of $85,413.06 for the Premises on the first day of each and every calendar month as Basic Rent. *See* Waldman Cert. at ¶ 9.

12.      Pursuant to the Lease, in the Fourth Year of the Lease (November 1, 2024 to October 31, 2025), Debtor was required to pay to Movant base rent of $87,975.45 for the Premises on the first day of each and every calendar month as Basic Rent. *See* Waldman Cert. at ¶ 10.

13.      Pursuant to the Lease, in the Fifth Year of the Lease (November 1, 2025 to October 31, 2026), Debtor was required to pay to Movant base rent of $87,975.45 for the Premises on the first day of each and every calendar month as Basic Rent. *See* Waldman Cert. at ¶ 11.

14.      The Lease is a net lease requiring Debtor to pay all expenses of the Premises of any nature including "all charges, impositions, costs, and expenses of every nature and kind related to the Premises." *See* Waldman Cert. at ¶ 12.

15.     During the term of the Lease, the Lease requires Debtor to pay all real estate taxes due to the Town of Harrison for the Premises as "Additional Rent." *See* Waldman Cert. at ¶ 13.

16.     The Lease provides that the failure to pay any Basic Rent, Additional Rent, or other amounts payable by Debtor to Movant thereunder within five (5) Business Days after Movant shall have given to Debtor a written notice specifying same is an "Event of Default" under the Lease. *See* Waldman Cert. at ¶ 14.

17.     Under the terms of the Lease, any installment or installments of Basic Rent or Additional Rent that are not paid within ten (10) days after the date when due, will bear interest at the Default Interest Rate of Eight (8%) percentage points over the prime commercial lending rate publicly announced from time to time by Citibank N.A. or its successor bank. *See* Waldman Cert. at ¶ 15.

18.     Under the terms of the Lease, Movant is also entitled to recover a 5% late fee on all amounts not timely paid as required under the Lease. *See* Waldman Cert. at ¶ 16.

19.     Under the terms of the Lease, Movant is entitled to recover attorney's fees and court costs for having to bring an action against Debtor to recover the Basic Rent, Additional Rent or other charges required under the Lease. *See* Waldman Cert. at ¶ 17.

20.     Debtor defaulted on its rental obligations under the Lease by failing to pay to Movant the Basic Rent and Additional Rent due on April 1, 2023 and thereafter and by failing to pay other charges required pursuant to the Lease. *See* Waldman Cert. at ¶ 18.

21.     Movant provided notice to Debtor of Debtor's failure to pay Basic Rent, Additional Rent and other charges on numerous occasions beginning on April 24, 2023. *See* Waldman Cert. at ¶ 19.

22.     On July 24, 2023, due to the failure to pay Basic Rent, Additional Rent and other charges starting with the payment due April 1, 2023, Movant's then attorney served a "Notice of Default and Notice of Termination" of the Lease on Debtor. *See* Waldman Cert. at ¶ 20.

23.     Pursuant to the Notice of Default and Notice of Termination, Movant terminated the Lease as of August 1, 2023 and demanded that Debtor quit and surrender possession of the Premises to Movant. *See* Waldman Cert. at ¶ 21.

24.     The Lease provides that Movant may require Tenant to pay liquidated damages as follows:

> If Landlord terminates this Lease pursuant to Article 20, Landlord will have the right to require Tenant to pay to Landlord, on demand, as liquidated and agreed final damages in lieu of Tenant's liability under Section 20.2(b), an amount equal to the difference between (i) the Basic Rent and Additional Rent, computed on the basis of the then current annual rate of Basic Rent and Additional Rent and all fixed and determinable increases in Basic Rent, which would have been payable from the date of such demand to the date when this Lease would have expired if it had not been terminated, and (ii) the then fair rental value of the Premises for the same period less the costs of all reletting expenses, including the cost to paint, alter or divide the space, put the same in proper repair, reasonable attorneys' fees and disbursements and reasonable brokerage fees. Upon payment of such liquidated and agreed final damages, Tenant will be released from all further liability under this Lease with respect to the period after the date of such demand, except for those obligations that expressly survive the termination of this Lease. If, after the Event of Default giving rise to the termination of this Lease, but before presentation of proof of such liquidated damages, the Premises, or any part thereof, are re-let by Landlord for a term of three (3) years or more, the amount of rent reserved upon such reletting will be deemed to be the fair rental value for the part of the Premises re-let during the term of such reletting.

*See* Waldman Cert. at ¶ 22.

**B.    The Bankruptcy**

25.    On April 2, 2024, (the "Petition Date") Movant filed a voluntary chapter 11 bankruptcy petition with the NJ Bankruptcy Court. *See* Waldman Cert. at ¶ 23. That bankruptcy case is pending. *Id.*

26.    On April 4, 2024, the Clerk of the NJ Bankruptcy Court established June 11, 2024, as the date for all persons or entities, other than governmental units, to file a claim against the debtors (the "Claims Bar Date"). *See* Waldman Cert. at ¶ 24.

27.    On May 6, 2024, Movant commenced an adversary proceeding against Debtor by filing a Verified Complaint (the "Complaint"). *See* Waldman Cert. at ¶ 25. The Complaint asserts claims against Debtor for (i) breach of contract, (ii) turnover of estate property, and (iii) unjust enrichment (the "Adversary Proceeding"). *Id.*

28.    On the Claims Bar Date, Debtor filed a proof of claim against Movant asserting a claim for the Security Deposit and any contingent and/or unliquidated claims related to any counterclaims that may be asserted in connection with the Adversary Proceeding (the "Proof of Claim"). *See* Waldman Cert. at ¶ 26.

## RELIEF REQUESTED

29.    By this Motion, Movant respectfully requests the entry of an order, substantially in the form attached hereto granting relief from the automatic stay to permit the NJ Bankruptcy Court to consider and rule upon a motion to disallow the Proof of Claim filed by the Debtor.

## BASIS FOR RELIEF

30.    The Bankruptcy Code provides that "on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this

section, such as by terminating, annulling, modifying, or conditioning such stay — (1) for

cause…11 U.S.C. § 362(d)(1).

31.     The term "cause" is not defined in the Bankruptcy Code but rather must be

determined on a case-by-case basis. *In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del.

1992). "Cause is a flexible concept and courts often . . . examin[e] the totality of the circumstances

to determine whether sufficient cause exists to lift the stay." *In re SCO Group, Inc.*, 395 B.R. 852,

856 (Bankr. D. Del. 2007). The logic behind § 362(d) is that it is often appropriate to allow

litigation to proceed in its initial forum, if there is no prejudice to the estate, "in order to leave the

parties to their chosen forum and to relieve the bankruptcy court from duties that may be handled

elsewhere." *In re Tribune Co.*, 418 B.R. 116, 126 (Bankr. D. Del. 2009) (quoting legislative history

of § 362(d) (internal citations omitted).

32.     This Court applies a three-pronged balancing test in determining whether "cause"

exists for granting relief from the automatic stay to continue litigation: (a) Whether prejudice to

either the bankrupt estate or the debtor will result from continuation of the…suit; (b) Whether the

hardship to the non-bankrupt party by maintenance of the stay outweighs the debtor's hardship;

and (c) the creditor's probability of success on the merits. *Id.* Here, the facts weigh heavily in the

Movant's favor on each of these three prongs. Under the balancing test, the stay in this case should

be lifted.

33.     As for the first factor, no prejudice will occur to the bankruptcy estate or the Debtor

because the Movant seeks relief from the stay only to permit the NJ Bankruptcy Court to render a

decision on a motion to disallow the proof of claim filed by the Debtor. Neither the Debtor nor the

estate will be obligated to expend any further resources, as the proof of claim has already been

submitted. Moreover, allowing the NJ Bankruptcy Court to rule on the Proof of Claim will allow Movant to quantify Debtor's claims.

34.     The second factor also weighs in favor of the Movant. If stay relief is not granted, the Movant will be obligated to present the arguments already made in the NJ Bankruptcy Court in the Adversary Proceeding to this Court, unnecessarily incurring additional fees and expenses.

35.     The third factor, probability of success, also weighs in favor of stay relief. The likelihood of success on the merits prong is satisfied by "even a slight probability of success on the merits may be sufficient to support lifting an automatic stay." *In re Continental Airlines, Inc.*, 152 B.R. 420, 426 (D. Del 1993). As a direct and consequential result of Debtor's breach of the Lease, Movant has been monetarily damaged, and pursuant to the terms of the Lease, the Security Deposit or any potion thereof may be used to draw down the entire amount to adjust the amount of damages owed to Movant. On the facts before the Court, cause exists to lift the stay in order to permit the NJ Bankruptcy Court to render a decision on a motion to disallow the Proof of Claim filed by the Debtor in the Movant's bankruptcy proceeding.

36.     In addition to the foregoing balancing test, the intent of Congress when drafting the Bankruptcy Code supports the requested relief. It was clearly the intent of Congress to allow proceedings to take place so long as there is no interference with the actual bankruptcy proceedings. "[I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere." H.R.Rep. No. 595, 95th Cong., 1st Sess., 341 (1977). Here, there will be no interference with the actual bankruptcy proceedings because lifting the stay will do nothing more than allow the NJ Bankruptcy Court to render a decision on a motion to disallow the Proof of

Claim. Thus, the stay should be lifted so that the intent of Congress can be carried out and so that this Court can be relieved of this matter in deference to another court with proper jurisdiction.

37.     Although the automatic stay that is imposed in bankruptcy proceedings is historically important to protect debtors, it serves no legitimate purpose here. The core purpose of a stay in bankruptcy is "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." *Matter of Rexene Products Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992). None of these issues is present here. Accordingly, the stay is unnecessary because it is not protecting the Debtor from any of the core concerns for which a stay is normally implemented.

38.     Lastly, the burden of proof for lifting a stay is outlined in 11 U.S.C. 362(g), which states, "[i]n a hearing for relief under subsection (d) or (e), (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and (2) the party opposing such relief has the burden of proof on all other issues." Therefore, the burden of resisting the relief that the Movant seeks is now on the Debtor.

**NOTICE**

39.     Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the debtors; (b) the U.S. Trustee; (c) the debtors' prepetition secured lender; (d) the Debtors' 30 largest unsecured creditors on a consolidated basis; and (e) all parties requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Movant submits that no other or further notice is required.

## NO PRIOR REQUEST

40.     No previous request for the relief requested herein has been made to this or any other court.

**WHEREFORE**, the Movant respectfully requests that the Court (a) enter the Order, substantially in the form attached hereto, and (b) grant such other and further relief as is just and proper.


Dated: July 16, 2025                    **K&L GATES LLP**

*/s/ Matthew B. Goeller*
Matthew B. Goeller (No. 6283)
600 N. King Street, Suite 901
Wilmington, DE 19801
Telephone: (302) 416-7000
Facsimile: (302) 416-7020
Email: matthew.goeller@klgates.com

*Special Counsel for Supor Properties 600 Urban Renewal, LLC*